AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

JAN 20 2022

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 22-91 MR
)
a blue colored Apple iPhone )
(Subject Telephone) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
a blue colored Apple iPhone (Subject Telephone), more fully described in Attachment A, which is attached and fully incorporated.

located in the _____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and fully incorporated.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 31 U.S.C. 5332 | Bulk Cash Smuggling |

The application is based on these facts:
See attached affidavit, Attachment C, which is attached and fully incorporated herein.

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

RYAN M BECK  Digitally signed by RYAN M BECK
              Date: 2022.01.19 15:31:17 -07'00
_____
Applicant's signature

Ryan Beck, HSI Special Agent
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephonically sworn and electronically signed.__ *(specify reliable electronic means)*.

Date: __January 20, 2022__

_____
Judge's signature

City and state: Las Cruces, New Mexico    Carmen E. Garza, Chief United States Magistrate Judge
_____
Printed name and title

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of the warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic device (referred to in **Attachment B** and **Attachment C** as the Subject Telephone):

### Subject Telephone

The Subject Telephone is a blue Apple iPhone with a silver in color sticker on the back featuring a skull and crossbones. It was seized by agents from Kevin RIOS at the time of his arrest on January 3, 2022. The Subject Telephone is currently located at the Homeland Security Investigations office in Las Cruces, New Mexico and is depicted below:




(Photographs of the Subject Telephone)

Page **1** of **1**

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all records, in whatever format, stored on the Subject Telephone as described in **Attachment A** that are related to violations of 31 U.S.C. § 5332 by Kevin Rios, including:

1. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply and other associates of the user of the Subject Telephone;

2. Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on, the Subject Telephone, along with the date and time each such communication occurred;

3. Text message logs and text messages whether sent from, to, or drafted on, the Subject Telephone, along with the date and time each such communication occurred;

4. The content of voice mail messages stored on the Subject Telephone, along with the date and time each such communication occurred;

5. Photographs or video recordings stored on the Subject Telephone;

6. Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephone;

7. Information relating to other methods of communications utilized by the user of the Subject Telephone, as well as stored on the Subject Telephone;

8. Bank records, checks, credit card bills, account information and other financial records stored on the Subject Telephone; and

9. Evidence of user attribution showing who used or owned the Subject Telephone, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT FOR THE SUBJECT TELEPHONE

Your Affiant, Ryan Beck, having been duly sworn, does hereby depose and say:

1. I am a Special Agent of Homeland Security Investigations (HSI) assigned to the Office of the Assistant Special Agent in Charge, Las Cruces, New Mexico. As a Special Agent, I am empowered by Title 31 of the United States Code to effect arrests, searches, and seizures for violations of the federal financial laws. I have been a Special Agent since September 2020. I have received approximately 26 weeks of specialized training at the Federal Law Enforcement Training Academy in Glynco, Georgia. This training included several hundred hours of comprehensive, formalized instruction in, but not limited to, basic financial investigations, familiarization with United States financial laws, money laundering, and electronic and physical surveillance procedures.

2. Since being employed by HSI, I have participated in surveillance activities, worked with confidential sources, effected arrests, seized and processed evidence, conducted interviews, and consulted with senior special agents about investigations.

3. Prior to working for HSI, I was a sworn and certified law enforcement officer in the State of New Mexico from 2012 to 2020, where I ultimately held the rank of Detective Lieutenant and was a Task Force Officer for the Federal Bureau of Investigations. I was responsible for the investigation and preparation of various charging documents, arrest warrants, and search warrants for both misdemeanor and felony violations of New Mexico state law. I also hold a Bachelor's of Criminal Justice from New Mexico State University with a Minor in Security Technology and Intelligence Studies.

4. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation, discussions with other law enforcement officers who were involved in the investigation, and a review of reports written by other law enforcement officers concerning the investigation.

5. Through my training and experience, I know that bulk currency traffickers often maintain one or more cellular or "smart" telephones ("devices") which they utilize to further their bulk currency trafficking. Currency traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors and other co-conspirators. I know based upon my training and experience that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and

distribution of bulk currency, as well as the subsequent laundering of the proceeds of these illegal activities.

6. I further know from my training and experience, that a cache of information including dialed, received, or missed calls and text messages sent, received, or placed in draft status, can be found on these devices. I know that the identities and telephonenumbers of other participants in the currency trafficking activity are maintained in the contact lists of these devices. In my experience, currency traffickers also use these devices to take and store photographs or video recordings of themselves with their co- conspirators and with contraband including narcotics, currency, and firearms. Currency traffickers also use the GPS or location applications of these devices, which can reveal their whereabouts when they conducted or arranged currency related activities or travel. In addition, bulk currency traffickers also use these devices to store information related to the financial transactions that occur during the course of their currency trafficking, such as ledgers and financial accounts and transactions. In my experience, the devices used by bulk currency traffickers often contain evidence relating to their currency trafficking activities including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

7. I further know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information, authentication information, and may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. What information isstored on the SIM card, on the device, or is stored in both locations varies depending on the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to currency trafficking activity may be located onboth the SIM card itself, as well as the device in which the SIM card was inserted.

8. The following information is based upon my personal knowledge as well as information provided by other federal, state or local officers and is presented asprobable cause to search a blue Apple iPhone cellular smart phone (hereafter referred to as the "Subject Telephone"), to include any SIM cards found in or with the Subject Telephone, which was seized from Kevin RIOS on January 3, 2022 on Interstate 10 near mile marker 162, near Anthony, New Mexico in the county of Dona Ana.

9. RIOS was arrested following a traffic stop in which law enforcement officers located approximately $230,000 in the vehicle he was traveling in. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to

establish probable cause to search the Subject Telephone for evidence of violations of 31 U.S.C. § 5332.

The request to search the Subject Telephone is based on the following facts:

10. On January 3, 2022, New Mexico State Police (NMSP) Officer Leonel Palomares, who is also a Homeland Security Investigations (HSI) Task Force Officer and who drives a marked police unit, conducted a traffic stop of a blue in color 2020 Nissan Sentra with Texas (TX) license plate NHH8870 on Interstate 10, mile marker 162, near Anthony, New Mexico (NM), for speeding (traveling 76 miles per hour in a 65 mile per hour zone). Upon Officer Palomares approaching the vehicle, the driver was identified as Kevin RIOS. After Officer Palomares notified RIOS of the reason for the traffic stop, he further learned that RIOS was not in possession of a driver's license and had no proof of insurance for the vehicle.

11. Officer Palomares instructed RIOS to exit his vehicle and walk to Officer Palomares' police unit, where RIOS agreed to answer questions about his travel. RIOS proceeded to state that he had driven to Denver, Colorado, to drop off his cousin and was on his way back to Juarez, Mexico, where RIOS resides.

12. Officer Palomares explained to RIOS that he had two options in reference to the traffic violations. One option was to receive three traffic citations for the traffic violations, which would require him to appear in court and present his case to a judge. The other option was that RIOS could receive three warning notices and not appear in court or pay a fine. But electing the warning notices would be considered an admission of guilt of the traffic violations. RIOS elected to receive the warning notices.

13. After issuing the warning notices for speeding, no driver's license, and no insurance, Officer Palomares notified RIOS that the traffic stop was complete, and RIOS was free to leave. As RIOS was walking back to his vehicle, Officer Palomares called out to him and asked if RIOS would be willing to answer some additional questions regarding his travel. RIOS agreed and voluntarily walked back to Officer Palomares' vehicle.

14. RIOS notified Officer Palomares that he had driven to Denver, Colorado, to drop his cousin off with his aunt and was driving back to Juarez, Mexico. RIOS identified his cousin as "Damian Cerros." It should be noted that in November 2021, Officer Palomares made a traffic stop of a vehicle registered to a "Damian Cerros," who was present inside the vehicle at the time of the stop. During that incident, $185,950 in concealed U.S. currency was seized.

15. RIOS stated that he did not know the address of where he dropped Cerros off and did not know his aunt's phone number. Officer Palomares noted that RIOS was acting nervous by moving around a lot and kept getting closer to Officer Palomares. RIOS, who was also shaking, told Officer Palomares that he was nervous because his father was strict, and he did not want his father to find out about the traffic stop.

16. Officer Palomares asked RIOS about the contents of his vehicle and RIOS admitted that he had a backpack containing nine bundles of what he believed to be either money or drugs. RIOS stated that he had touched the bundles, which he claimed to have stolen from some "homeless people" while in Denver. RIOS notified Officer Palomares that he believed the homeless people were going to use the money to buy drugs, so RIOS took the money with intentions of using it to pay for his college tuition. RIOS further told Officer Palomares that he has previously seen signs while exiting the United States into Mexico that state a requirement to declare any currency over $10,000 being exported. When asked if he was going to declare the currency prior to leaving the United States, RIOS stated that he might or might not do so.

17. RIOS notified Officer Palomares that he had no additional large quantities of money in his vehicle other than what was in the backpack and provided Officer Palomares with verbal and written consent to search the vehicle.

18. Officer Palomares did search the vehicle and, in addition to eight bundles of plastic wrapped U.S. currency that were in the previously mentioned backpack (located on the rear passenger side floorboard, covered with a sun shade), he noticed that there were fresh tool marks on the panels around the center console. He also noticed that there was a tool located inside the vehicle that matched the screws holding the console together. Officer Palomares utilized the tool to dismantle the center console and located 14 more bundles of plastic wrapped U.S. currency, which were concealed within a natural void underneath the console. Officer Palomares subsequently detained RIOS and contacted Special Agents from Homeland Security Investigations -Las Cruces, who responded to the scene.

19. After being transported to the HSI Las Cruces office, RIOS notified special agents that he did not want to answer further questions without an attorney present.

20. The Subject Telephone was found in RIOS' possession at the time of the traffic stop and he claimed ownership of it. Based on my training, knowledge, and experience involving the use of cellular telephones to further bulk currency trafficking activities, as well as information obtained during this ongoing investigation into RIOS, I believe that RIOS utilized the Subject Telephone to further his currency trafficking activities. In conclusion, I believe that evidence related to the currency seized on January 3, 2022, will likely be obtained from the Subject Telephone.

21. Based on the above information, there is probable cause to believe that evidence of violations of 31 U.S.C. § 5332 are located in the Subject Telephone. Therefore, I respectfully request that this Court issue a search warrant for the Subject Telephone, more particularly described in Attachment A, authorizing the seizure and examination of the items described in Attachment B.

Dated this ___ day of January 2022.

RYAN M BECK
Digitally signed by RYAN M BECK
Date: 2022.01.19 15:32:08 -07'1

Ryan Beck
Special Agent
Homeland Security Investigations

Electronically submitted and telephonically sworn to before me this **20th** day of January 2022.

CARMEN E. GARZA
Chief United States Magistrate Judge